IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Isaac Daryl Washington, | C/A No. 0:08-3170-GRA-PJG |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Michael J. Astrue,<br>Commissioner of Social Security, | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Isaac Daryl Washington ("Washington"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying Washington's claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On June 14, 2005, Washington applied for SSI and DIB. Washington's applications were denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 8, 2007 at which Washington appeared and testified and was represented by counsel. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated November 30, 2007 finding that Washington was not disabled within the meaning of the Social Security Act.

Washington was thirty-five years old at the time of the ALJ's decision. He has at least a high school education and past relevant work experience as a package handler, waiter, stocker, and fast

food cook. (Tr. 114, 327.) Washington alleges disability since June 1, 2004 due to thyroid disorder, depression, and anxiety. (Tr. 30-33, 294-95.)

The ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since June 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

    \* \* \*

3. The claimant has the following severe combination of impairments: Graves' disease and depression/anxiety (20 CFR 404.1520(c) and 416.920(c)).

    \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    \* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: sit, stand. And walk each for 6 hours of an 8-hour day; frequently lift/carry 20 pounds; occasionally lift 50 pounds; frequently climb, stoop, bend, balance, kneel, crouch, crawl, and perform handling, fingering and feeling; avoid concentrated exposure to temperature extremes; and never climb ladders, scaffolds or ropes or be exposed to fumes. He would also require a sit-stand option allowing for the option to walk/stand for 30 minutes after sitting for one hour. He would be further restricted to work that involves simple 1-2 step tasks with only occasional contact with the public.

    \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

7. The claimant was born on September 29, 1972 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-29.)

On July 18, 2008, the Appeals Council denied Washington's request for review, making the decision of the ALJ the final action of the Commissioner. Washington filed this action on September 16, 2008.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

Washington raises the following five issues for this judicial review:

I. The Administrative Law Judge (ALJ) erred in his findings regarding plaintiff's residual functional capacity.

II. The ALJ failed to give proper weight to the opinions of plaintiff's treating physician regarding the nature and severity of his impairments.

III. The ALJ erred in relying on the testimony of the vocational expert, as the hypothetical question he posed to the VE did not include all of plaintiff's limitations as established by the record.

IV. The ALJ erred in finding that plaintiff was not disabled, as the defendant failed to carry its burden of proof at step five of the sequential evaluation process that there are a significant number of jobs in the national economy that he can perform.

V. The ALJ's decision is not supported by competent substantial evidence.

(Pl.'s Br. at 1, Docket Entry 21.)

## DISCUSSION

**A. Residual Functional Capacity**

Washington contends that the ALJ's residual functional capacity ("RFC") assessment "is inconsistent with the opinions expressed by [Washington's] treating physician regarding the nature and extent of his functional limitations," and further, even without considering the medical evidence,

is "inherently flawed." (Pl.'s Br. at 9-10, Docket Entry 21.) The ALJ concluded that Washington retained the RFC to

> sit, stand. And walk each for 6 hours of an 8-hour day; frequently lift/carry 20 pounds; occasionally lift 50 pounds; frequently climb, stoop, bend, balance, kneel, crouch, crawl, and perform handling, fingering and feeling; avoid concentrated exposure to temperature extremes; and never climb ladders, scaffolds or ropes or be exposed to fumes. He would also require a sit-stand option allowing for the option to walk/stand for 30 minutes after sitting for one hour. He would be further restricted to work that involves simple 1-2 step tasks with only occasional contact with the public.

(Tr. 22.)

An RFC "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

Washington contends that the ALJ erroneously determined that Washington retained the RFC to perform medium work. (Pl.'s Br. at 9, Docket Entry 21 & Pl.'s Reply Br. at 1, Docket Entry 24.) However, as pointed out by the Commissioner, no such reference is included in the ALJ's RFC determination or in his accompanying discussion. (Def.'s Br. at 9, Docket Entry 23.) In reply, Washington points to the ALJ's discussion of whether there are a significant number of jobs in the national economy that Washington can perform, in which the ALJ stated, "To determine the extent to which [Washington's] limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (Tr. 28.) However, this sentence cannot be viewed in isolation. As explicitly stated by

the ALJ in the following sentence, "[Washington's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (Id.)

Washington does not appear to dispute the limitations included in his RFC; rather, his argument focuses on the alleged inconsistencies between the limitations included in his RFC and the requirements of medium work. Washington contends that these limitations are "clearly incompatible with even a limited or reduced range of medium work." (Pl.'s Reply Br. at 2, Docket Entry 24.) However, these "inconsistencies" appear to be exactly what the ALJ was referencing as Washington's additional limitations that prevent him from performing "the full range of medium work." Further, the court observes that the ALJ presented the vocational expert with a hypothetical question that included all of these limitations. See English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) ("In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment."). The ALJ's hypothetical question consisted of the above-quoted RFC and did not mention or refer to medium work. In response, the vocational expert provided three occupations that Washington would be able to perform, which the court notes are all classified as "light work." (Tr. 28.); see also Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*") (emphasis in original); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted).

Courts need not reverse agency action because of a harmless error. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases). Based on the above discussion, even if Washington's assertion is correct and the ALJ determined that Washington was capable of performing medium work and this was an error, Washington fails to establish that this alleged error affected the outcome of the case or changed the substance of the decision in any manner.

**B.    Treating Physician**

Washington next asserts that the ALJ erred in failing to give an opinion of Washington's treating physician, Dr. Sherif Yacob Wasef, proper weight. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In this case, the ALJ "accorded less than controlling weight to Dr. Wasef's assessment from October 2007 that the claimant is not capable of performing any work." (Tr. 25.) The ALJ stated that he rejected this assessment based on his determination that (1) Dr. Wasef's opinion was "more a vocational opinion than medical opinion;" (2) Dr. Wasef's treatment records revealed no restrictions recommended until he issued this assessment; (3) Dr. Wasef's assessment was based primarily on Washington's subjective symptoms which were not reliable; and (4) the assessment was inconsistent with the ALJ's observations at the hearing and an assessment by Dr. Ray Hodges, Washington's psychiatrist. (Id.)

Dr. Wasef's assessment was completed on a Thyroid Disorder Medical Assessment Form. In that form, Dr. Wasef checked boxes indicating that Washington exhibited the following signs or symptoms: Grave's disease chronic fatigue/lethargy, heat/cold intolerance, weakness, depression/anxiety, frequent headaches, ophthalmopathy, and palpitations. He further indicated that these symptoms would frequently interfere with Washington's attention and concentration. (Tr. 170-71.) Dr. Wasef identified that Washington would be unable to be exposed to public contact, strict deadlines, close interaction with coworkers/supervisors, or work hazards and would be unable to perform routine, repetitive, detailed, complicated, or fast-paced tasks. (Tr. 171.) He further opined that Washington would be able to walk three blocks; sit for thirty minutes at a time; stand for twenty minutes at a time; and sit and stand/walk for a total of two hours in an eight hour work day. Finally, Dr. Wasef opined that Washington would need eight ten-minute breaks per day due to anxiety, irritability, and palpatations. (Tr. 172.) Dr. Wasef checked boxes indicating that Washington could frequently lift up to twenty pounds; rarely lift fifty pounds; rarely twist or stoop; could use his hands

to grasp, turn, or twist objects twenty percent of the time; never use his fingers for fine manipulation; and could use his arms for reaching fifty percent of the time. (Tr. 173.) Dr. Wasef also opined that Washington would be absent more than four days per month. (Id.)

Washington first argues, and the Commissioner appears to concede, that the ALJ erred in discounting Dr. Wasef's opinion based on his determination that it was a vocational rather than medical opinion.[1] Washington also argues that the ALJ erred in determining that Dr. Wasef's opinion was based on Washington's subjective symptoms because he contends that it is supported by the objective medical evidence. The "objective medical evidence" Washington relies on are Dr. Wasef's diagnoses, treatments, and notes reflecting symptoms Washington is experiencing. The only clinical notes that Washington relies on that could support his functional limitations are records from the Medical University of South Carolina indicating that "Washington's clinical examinations were positive for tremors on several occasions." (Pl.'s Br. at 13, Docket Entry 21; Pl.'s Reply Br. at 3, Docket Entry 24.) With regard to the assessment by Dr. Hodges, Washington's psychiatrist, Washington asserts that while Dr. Hodges stated that Washington was "articulate and very bright," the ALJ misconstrued this statement as Dr. Hodges assigned Washington a Global Assessment of Function ("GAF") rating of 45.[2] Washington contends that this rating "by definition reflects his opinion that Mr. Washington was 'unable to keep a job.'" (Pl.'s Br. at 15, Docket Entry 21.)

---

[1] However, the Commissioner argues that this error was harmless because it was only one of several reasons to discount Dr. Wasef's opinion. (Def.'s Br. at 13-14, Docket Entry 23.)

[2] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. The parties agree that a GAF rating of 41-50 is defined as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." (Def.'s Br. at 15, Docket Entry 23; see also Pl.'s Br. at 6, Docket Entry 21.)

Further, Washington asserts that discounting Dr. Wasef's opinion based on Washington's "ability to testify as to the names of his doctor's and medications" is an "absurd statement" and "dubious finding" that raises questions about the ALJ's entire decision.[3] Finally, Washington argues that the ALJ also discounted Dr. Wasef's opinion based on a note from October 2005 by Dr. Joel Freeman, a treating physician, which indicated that Washington would be able to return to work two to three weeks after completing thyroid abalation therapy. (See Tr. 25, 241.) Washington argues that Dr. Freeman's note was speculative and that Washington in fact required additional treatment and therapy.

As stated above, the ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail his reasons for not accepting all of Dr. Wasef's opinions. Even accepting all of Washington's arguments as correct, the court is not persuaded that the ALJ's conclusions are unsupported. Blalock, 483 F.2d at 775 (4th Cir. 1973) (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Washington has failed to point to any evidence which would support the *functional limitations* opined by Dr. Wasef; rather, he repeatedly points out the diagnoses and treatment notes of Dr. Wasef. Moreover, Washington does not contest that Dr. Wasef's treatment records revealed no functional restrictions until he issued the assessment at issue. Nor does Washington argue that the ALJ's observations of Washington during the hearing were inaccurate. As stated above, on review the court may not "undertake to re-weigh conflicting evidence, make

---

[3]The Commissioner does not address this specific argument, but asserts that to the extent this was an error, it was harmless because it was only one of several reasons to discount Dr. Wasef's opinion. (Def.'s Br. at 16, Docket Entry 23.)

credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, upon review of the medical evidence and the ALJ's decision, the court finds substantial evidence to support the ALJ's decision to accord Dr. Wasef's opinion less than full weight. See, e.g., 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

**C.     Remaining Issues**

Washington's remaining issues hinge on the success of the above arguments.[4] As the court has determined that Washington has failed to demonstrate that these conclusions by the ALJ were not supported by substantial evidence, these arguments must also fail.

---

[4]These issues contend that (1) because the ALJ erred in discounting Dr. Wasef's assessment, the ALJ also erred in relying on the testimony of the vocational expert because he contends that the hypothetical question did not contain all of Washington's credible limitations and restrictions and (2) because the ALJ erred in relying on the vocation expert's testimony, the ALJ erred in determining that there are jobs in the national economy that Washington can perform. (Pl.'s Br. at 16-18, Docket Entry 21.)

**RECOMMENDATION**

For the foregoing reasons, the court finds that the Commissioner's decision was supported by substantial evidence and reached through application of the correct legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 23, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).